BERT DALY, APPELLANT, v. PIERRE P. GARVEN, RE-
SPONDENT.

Argued March 21, 1917—Decided June 18, 1917.

1. The provision of the act of April 7th, 1914, commonly known
   as the Preferential Voting act (*Pamph. L.*, *p.* 170) that "all
   ballots shall be void which do not contain first choice votes for
   as many candidates as there are offices to be filled," is not
   separable from the other provisions of the statute so that it may
   be rejected and the residue of the statute be permitted to stand ;
   hence, if such provision be unconstitutional the act as a whole
   fails and an election held under its terms is incapable of con-
   ferring a *de jure* title to a private relator under section 4 of the
   *Quo Warranto* act.

2. In *quo warranto*, when a defeated candidate for an elective
   office, in order to obtain a judicial determination that he re-
   ceived a plurality of the ballots cast at such election, seeks a
   decision as to the unconstitutionality of the statute under which
   the election was held, which is fatal to his *de jure* title to the
   office, the court, in view of the futility of deciding the question,
   will decline to pass upon it.

On appeal from the Supreme Court.

For the appellant, *Elmer W. Demarest.*

For the respondent, *Gilbert Collins.*

The opinion of the court was delivered by

GARRISON, J. This appeal brings up for review a judg-
ment of the Supreme Court in favor of the defendant in *quo
warranto* entered upon a *postea* certifying the result of a trial
before the Circuit Court of Hudson county. The parties were
candidates for the office of commissioner of the city of
Bayonne under the act of 1911, commonly known as the
Walsh act. *Pamph. L., p.* 462. Five commissioners were
to be elected. The election was held under the supplement
of 1914, commonly known as the Preferential Voting act
(*Pamph. L., p.* 170), the pertinent provision of which is

that "All ballots shall be void which do not contain first choice votes for as many candidates as there are offices to be filled," which was brought to the attention of the voters by a direction on the ballot, viz., "If more than one office is to be filled, vote as many first choices as there are offices to be elected or the ballot will be void."

More than nine thousand ballots were cast in compliance with this statutory provision, and counted for the respective candidates. The canvass of the votes so counted showed the election of Garven, the defendant, over Daly, the relator, by less than a score of votes. In making this canvass one hundred and ninety-two ballots were rejected for the reason that they did not contain first choice votes for five candidates for the office of commissioner. If these ballots had been counted they would change the result by giving the relator a plurality over the defendant. The relator, deeming the provision of the statute which required the rejection of these one hundred and ninety-two ballots to be unconstitutional, and believing that he was lawfully entitled to the office in question, filed his information in the nature of a *quo warranto* under the fourth section of the *Quo Warranto* act, in which he set forth the foregoing facts in detail, concluding with the charge that the said relator by virtue of said election was lawfully elected one of the commissioners of the said city of Bayonne, and is entitled to said office which the said Pierre P. Garven hath usurped to the exclusion of said Bert Daly. Issue was joined, and upon the trial at *nisi prius,* Judge Speer, sitting by consent without a jury, held that the act of 1914 was not unconstitutional, which decision justified the rejection of the one hundred and ninety-two ballots on which the relator's claim to the office rested, and this is the trial error that is laid as the ground for the reversal of the judgment of the court below.

It is the contention of the appellant that the act of 1914 is unconstitutional for the reason that it places a compulsion upon all electors to vote a first choice for as many candidates for commissioner as there were offices to be filled. His argument is that this provision may operate to shut off voters

from the ballot box and hence must fall before the constitutional guaranty of the right to vote, citing *Ransom* v. *Black*, 54 *N. J. L.* 446. The following quotation from the brief of counsel for the appellant illustrates his argument: "It might very well happen in a given case that there were only five candidates for five offices. Two of them, perhaps, might be totally unfitted to fill the office. Yet, in order to cast a vote for the fit persons, the voter is compelled to vote for persons who should not be trusted with the administration of public offices."

A still stronger argument is that by being compelled to vote for other candidates in addition to voting for those who are his real choice, the elector may actually bring about the defeat of the candidates whose election he desires.

The constitutionality of an election law having these possibilities is evidently a debatable question of great interest and importance.

A subsidiary question of vital importance to the appellant's contention is whether this provision, if found to be unconstitutional, may be exscinded from the statute, leaving its remaining provisions to stand.

We are clearly of opinion that this cannot be done. The occasion for the exercise of this delicate judicial function is carefully stated by Mr. Justice Depue in *Johnson* v. *State*, 59 *N. J. L.* 535, 539, in these words: "The same statute may be in part constitutional and in part unconstitutional, and if the parts are wholly independent of each other, that which is constitutional may stand and that which is unconstitutional will be rejected; but if the different parts of the act are so intimately connected with and dependent upon each other as to warrant a belief that the legislature intended them as a whole, and that if all could not be carried into effect the legislature would not have passed the residue independently, and some parts are unconstitutional, all the provisions which are thus dependent upon each other must fail."

Stated more tersely, the same doctrine is laid down by Mr. Justice Dixon in *Albright* v. *Sussex County Lake Commission*, 71 *N. J. L.* 309, as follows: "The general rule with

regard to the validity of a statutory scheme, some feature of which proves to be unconstitutional, is that, if the objectionable feature be not so important to the legislative design as to warrant the opinion that the scheme would not have been authorized without it, then the residue of the scheme will be upheld; otherwise, the entire scheme will fail."

Tested by either of these *criteria* the provision in question is on the one hand not wholly independent of the other provisions of the act, but on the contrary is intimately connected with them and with the scheme as a whole; while as to its importance, it was evidently inserted under the belief that without it a complete board of commissioners might not be elected, and so the entire scheme of the statute be defeated.

The entire scheme of the statute relates to the holding of an election in which the provision in question is the most striking feature; to eliminate such a feature from a complete legislative program requires an act of legislation. Such a provision may be dropped by a subsequent legislature as the result of experience or because it differs in opinion from its predecessor. *Pamph. L.* 1916, *p.* 216. That, however, is a totally different thing from a judicial determination that the provision was deemed of little or no importance by the legislature that enacted it.

The provision that is attacked by the appellant is, therefore, not separable from the residue of the statute; hence, if such provision be unconstitutional, the statute is invalid and the election held under it is incapable of affording a *de jure* title to any of the candidates thereat, including the appellant.

True it is, that the respondent and the other *de facto* commissioners might not be directly affected by such a judicial opinion. The appellant, however, has no such *de facto* status; he is a private citizen claiming a *de jure* title to an office by force of an election, which, if his argument be sound, can confer a *de jure* title upon no one. For it must be remembered that the title of the relator as well as that of the respondent is at issue. *Lane* v. *Otis,* 68 *N. J. L.* 656.

In the proceeding which the appellant has instituted in his own right against the respondent, the very rights of both

parties are drawn into question. *Manahan* v. *Watts*, 64 *N. J. L.* 464.

This being so, to what end should a court consider and decide a constitutional question, which, if decided as the appellant argues it should be, would be of no avail to him as a suitor? The charge of the information is that the *de facto* tenure of the respondent excludes the appellant from an office to which he has the *de jure* title. If we cannot adjudge the latter, an adjudication of the former would be of no avail to this private relator. If the one hundred and ninety-two ballots on which the title of the appellant rests were improperly rejected because of the compulsory provision of the statute as to first choice under which the election was held, and if such compulsion renders the statute unconstitutional, then the remaining four thousand two hundred and ninety-three votes on which the appellant bases his title were cast under a like compulsion and were for a like reason incapable of affording valid evidence of a *de jure* title.

In fine, if the statute be invalid because of the compulsory feature it brought to bear upon all the electors, it is equally invalid as to those who yielded to such compulsion as it is to those who stood out against it. So that, adopting the appellant's illustration, every one of such four thousand two hundred and ninety-three ballots cast for him may have been so cast because of such compulsion. If this be too extreme, still it is at least true that we have no way of knowing how many ballots were cast for the relator because of the invalid provision of the statute.

To take another illustration from appellant's brief, "In the Bayonne election there were but thirteen candidates. Who can say whether or not voters were not disfranchised by being compelled to vote for at least five or not at all." Look at it as we may, an invalid election cannot invest the appellant with a *de jure* title.

To sum the matter up in a single sentence: In *quo warranto*, when a defeated candidate for an elective office, in order to obtain a judicial determination that he received a plurality of the ballots cast at an election, seeks a decision as to

the unconstitutionality of the statute under which the election was held, which is fatal to his *de jure* title to the office, the court, in view of the futility of deciding the question, will decline to pass upon it.

The redress sought by the appellant as a private relator has two aspects which are inter-related, viz., that the respondent should be ousted from his office in order that the appellant be installed therein, which would not be effected by a decision that the act of 1914 was unconstitutional.

A decision that cannot affect the litigants before the court ought not to be made, and if it ought not to be made, it need not be considered, especially in view of what was said by this court in *Devlin v. Wilson,* 88 *N. J. L.* 180.

Having thus reached the conclusion that upon no ground that is available to the appellant is any legal error shown in the action of the court below, the judgment of the Supreme Court is affirmed.

*For affirmance*—THE CHANCELLOR, GARRISON, SWAYZE, BERGEN, MINTURN, KALISCH, BLACK, HEPPENHEIMER, WILLIAMS, GARDNER, JJ. 10.

*For reversal*—None.